```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
```

MICHAEL REEVES,

                               **Plaintiff**,

      -against-

UNITED STATES OF AMERICA,

                               **Defendant**.

```
-----------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov. 2, 2020

1:19-CV-08629 (SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

    Plaintiff Michael Reeves, a native and citizen of Liberia, brings several claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. He alleges, among other things, that Immigration and Customs Officers ("ICE") subjected him to false arrest and excessive force, arising from an arrest on June 28, 2018.

    The Government moves to dismiss the complaint by asserting that this Court lacks subject matter jurisdiction to adjudicate Reeves's claims. It argues that Congress has stripped courts of jurisdiction for "any cause or claim" that stems from the Attorney General's decision or action to execute a removal order and that, because Reeves was arrested subject to such a decision or action, any claims arising from his 2018 arrest are barred from judicial review. See 8 U.S.C. § 1252(g). Reeves disagrees, arguing that because he had pending withholding of removal proceedings before an immigration judge at the time of his arrest, any order of removal was not final. Therefore, ICE officers could not have acted under a valid decision or action of the Attorney General, and the jurisdiction-stripping statute does not apply.

The Court finds that at the time of his 2018 arrest Reeves was subject to a valid and final order of removal. Additionally, the Court finds that Reeves's arrest followed a "decision or action by the Attorney General . . . to execute removal orders." 8 U.S.C. § 1252(g). Therefore, the jurisdiction-stripping provision applies to "any cause or claim" arising from that arrest. Id. Because all of Reeves's claims fall within that category, the Court is statutorily barred from hearing his case. Accordingly, the Government's motion is granted, and the case is dismissed.

## BACKGROUND

### I.      Factual Background

Michael Reeves is a 48-year-old native of Liberia who came to the United States lawfully as a teenager on April 26, 1986. He entered on a B1/B2 visa to visit his mother and stayed past its expiration to avoid returning to the ongoing conflict in Liberia. In the early 1990s, he was convicted of two criminal charges. Reeves was subsequently put into removal proceedings, ordered deported, and removed to Liberia on January 30, 1998. In Liberia, Reeves obtained a diplomatic visa under a different name and reentered the United States unlawfully in June 1998. Since then, Reeves has continued to build a life in the United States, including starting a family and raising children. See Compl. ¶30; Declaration of Kirti Reddy ("Reddy Decl."), Ex. A.

On April 11, 2014, Reeves was arrested on an allegation of possessing marijuana, though the charges were dismissed. That arrest, however, led Department of Homeland Security ("DHS") officials to reinstate Reeves's prior order of removal, and he was taken into ICE custody on July 23, 2014. Following an interview with an asylum officer, Reeves was found to have a reasonable fear of persecution if he was returned to Liberia, and his application for withholding of removal pursuant to the Convention Against Torture ("CAT") was referred to an

Immigration Judge. While Reeves's application was still pending he was granted bond and released from ICE custody. See Reddy Decl., Ex's. D, E, F.

Reeves's withholding proceedings was scheduled before Immigration Judge Vivienne Gordon-Uruakpa on July 21, 2016. See Reddy Decl., Ex. G. When Reeves failed to appear at his hearing, Judge Gordon-Uruakpa entered a form order, which contains several checkboxes stating:

> Withholding of Removal under the Convention Against Torture is:
> [ ] Granted
> [ ] Withdrawn
> [ ] Denied.

Reddy Decl., Ex. G. Under "[ ] Denied," the judge entered and marked a fourth box, writing-in "[X] Deemed abandoned as applicant failed to appear," and that "[t]he matter is returned to D.H.S." Id.

Following this order, ICE issued a Warrant of Removal directing its officers to take Reeves into custody and to remove him from the United States. On June 25, 2018, ICE officers arrested Reeves outside of his home, allegedly tackling him, placing him in a chokehold, and causing severe damage to his right shoulder. See 8 C.F.R. § 241.2; Reddy Decl., Ex. H; Pl.'s Aff. ¶4.

## II.   Procedural Background

On September 17, 2019, Reeves sued the United States alleging, among other things, that ICE officers subjected him to false arrest and excessive force during his 2018 arrest. His claims are brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.

The Government has moved to dismiss the complaint by asserting that this Court lacks subject matter jurisdiction to adjudicate Mr. Reeves claims. First, it argues that Congress has stripped courts of jurisdiction over "any cause or claim" that stems from the Attorney General's

(and thus, ICE's) decision or action to execute a removal order. See 8 U.S.C. § 1252(g). Next, it maintains that the United States has not waived sovereign immunity under the FTCA for claims arising from its employee's acts or omissions "exercising due care, in the execution of" the removal statute. See 28 U.S.C. § 2680(a); accord Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). It contends that, because ICE officers exercised due care in arresting Reeves, sovereign immunity remains intact. Finally, it argues that Congress has not expressly waived the United States' sovereign immunity regarding Reeves's constitutional claims, and that they are therefore not justiciable by the federal courts. See Glidden Co. v. Zdanok, 370 U.S. 530 (1962). Alternatively, the Government requests that the Court dismiss Reeves's complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I. Standard of Review

A federal district court must have either statutory or constitutional subject-matter jurisdiction in order to adjudicate a case, and a case must be dismissed if "the Court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12 §§ (b)(1) & (h)(3). "When confronted with a Rule 12(b)(1) motion, a court must distinguish between two types of challenges to subject matter jurisdiction." Tasini v. New York Times Co., Inc., 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002). In a *facial* attack, the moving party challenges the "sufficiency of the jurisdictional facts alleged, not the facts themselves." Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 887 n. 15 (2d Cir. 1996). In contrast, a *factual* attack—such as the one before this Court—does not presume the truth of the plaintiff's claims of jurisdiction "rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." Guadagno v. Wallack Ader Leviathan Assoc., 932 F. Supp. 94, 95 (S.D.N.Y. 1996), aff'd 125

F.3d 844 (2d Cir. 1997). Here, the Government does not argue that the Court would lack jurisdiction if all of Reeves's allegations were true. Instead, it argues that the *facts* upon which he asserts jurisdiction do not exist. See Tasini 184 F. Supp. 2d at 353.

Because the underlying facts upon which Reeves claims jurisdiction are at issue, it is appropriate for the Court to consider extrinsic evidence to resolve any factual disputes. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001) (noting that a district court "must" consider extrinsic evidence "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction"); Tasini, 184 F. Supp. 2d at 354, 358 n.7 (relying upon extrinsic declarations to undercut the plaintiff's standing claim). Generally, when deciding such a motion, a court will accept the pleaded allegations as factually true, "but does not draw all reasonable inferences in the plaintiff's favor." Figueroa v. Ministry for Foreign Affairs of Sweden, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016). That is because "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Hamm v. United States, 483 F.3d 135, 137–38 (2d Cir. 2007).

**II.     Section 1252(g) Deprives the Court of Jurisdiction**

The Government argues that this Court is barred from adjudicating any of Reeves's claims arising from his 2018 arrest because Congress has denied courts jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders." 8 U.S.C. § 1252(g). It contends that after Reeves failed to appear at his withholding proceedings, ICE officers—acting under the Attorney General— made the decision to execute his previous order of removal from 1997, which had been reinstated upon his arrest in 2014. Therefore, the Government's position is that Reeves's 2018 arrest

5

followed a "decision or action by the Attorney General to . . . execute removal orders." Accordingly, the jurisdiction-stripping provision would apply.

Reeves does not challenge this reading of the statute. Instead, he contends that the ICE officers who arrested him had no legal authority to do so because he was not subject to a final order of removal. Specifically, he argues that his reinstated removal order could not be considered "final" while his application for withholding of removal was still pending, and suggests that after he failed to appear at his withholding-only proceeding, those proceedings were "only administratively closed (and not terminated)". Because he believes there is no final order of removal, the jurisdiction-stripping provision does not apply.

To resolve this dispute, the Court must consider the legal effect of Reeves's reinstated order of removal and the Immigration Judge's decision to deem Reeves's application for withholding of removal "abandoned" and return his "matter" to DHS.

### A. Reeves's Reinstated Order of Removal

An order of removal was first entered against Reeves on November 25, 1997, and he was removed from the United States. Upon his illegal reentry, that order was reinstated on April 15, 2014. See Reddy Aff. Ex's B, C. Such reinstatement is statutorily mandated upon a finding that a person previously ordered removed has reentered the United States unlawfully. See 8 U.S.C. § 1231(a)(5). The Immigration and Nationality Act ("INA") makes clear that reinstated removal orders are "not subject to being reopened or reviewed" and that a person subject to such an order "shall be removed." Id. Here, reinstatement of Reeves's prior order of removal by ICE officials was appropriate upon confirming: (i) Reeves's identity; (ii) that he was subject to a prior order of removal; and (iii) that he reentered the country unlawfully. See 8 C.F.R. § 241.8(a)–(d); Garcia-Villeda v. Mukasey, 531 F.3d 141, 148 (2d Cir. 2008) ("This bare investigation can be

6

performed like any other ministerial enforcement action by an immigration officer, in lieu of an immigration judge.") (alteration, internal quotations, and citations omitted); Miller v. Mukasey, 539 F.3d 159, 163 (2d Cir. 2008) (finding that reinstatement of a prior order of removal by immigration officials—not judges—was valid).

The only exception to removal pursuant to reinstatement of a prior removal order is when a person subject to such an order expresses fear of returning to the country designated in the order. See 8 C.F.R. § 241.8(e). If an asylum officer determines that such fear is reasonable, the matter will be referred to an immigration judge for withholding of removal proceedings. See 8 C.F.R. § 208.31(e). After his 2014 arrest, an asylum officer found Reeves to have a reasonable fear of persecution if returned to Liberia. Accordingly, his matter was referred to an immigration judge for withholding-only proceedings.

Reinstated removal orders are not final during the pendency of withholding-only proceedings. See Guerra v. Shanahan, 831 F.3d 59, 64 (2d Cir. 2016) (plaintiff's "removal order is not final during the pendency of his withholding-only proceedings"). Accordingly, Reeves was not subject to removal while his Convention Against Torture withholding proceeding was pending.

### B. Abandonment of the CAT Application

The Immigration Judge determined that Reeves had "abandoned" his CAT relief application when he failed to appear and "returned" the matter to DHS. Reddy Decl., Ex. G. Reeves argues that this order administratively closed, rather than terminated, his withholding or removal application.

Immigration judges are conferred a general authority to administratively close cases. See Romero v. Barr, 937 F.3d 282, 292 (4th Cir. 2019) (holding that 8 C.F.R. §§ 1003.10(b) and

1003.1(d)(1)(ii) confer such authority). In the immigration context, administrative closure is not a final order, but "merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations." Matter of Amico, 19 I. & N. 652, 654 n.1 (1988). Administrative closure is generally appropriate to await some matter, not within the control of either the parties or the court, which "may not occur for a significant or undetermined period of time." Matter of Avetisyan, 251 I. & N. Dec. 688, 692 (2012). Examples might include when an alternate visa becomes available, or a collateral attack of criminal proceedings is pending. Id. at 696.

There are three compelling reasons to conclude that the Immigration Judge's order terminated Reeves's withholding proceedings and did not constitute an order of administrative closure: (1) the use of the word "abandoned"; (2) the annotation that the matter was "returned to D.H.S."; and (3) the directives of the regulations pertaining to withholding proceedings. First, "abandoned" is defined primarily as "deserted; forsaken." See American Heritage Dictionary of the English Language, Fifth Edition (2020). Both synonyms relate to a something that has been disposed of—*not* something ongoing or pending—lending to an interpretation of finality. Second, the immigration judge's additional notation that "[t]he matter is returned to D.H.S.," discharges any remaining ambiguity that she had desired to continue the proceedings or retain jurisdiction over the matter. It would be wholly contradictory to both return the matter to DHS, and simultaneously retain jurisdiction—a point which Reeves does not address. Moreover, although the immigration judge did not mark the checkbox labeled "Denied," the Code of Federal Regulations makes clear that when an applicant fails to appear at their withholding hearing their withholding of removal application "shall be denied." 8 C.F.R. § 1208.2 (c)(3)(ii). It is incongruous to suggest that the order—which makes no reference to administrative closure,

yet does direct the matter to DHS—should regardless be read to conflict with the explicit directives of the applicable regulations.

Reeves does not address the plain language of the order directly, except to argue that ICE was "confused" about its meaning. See Pl.'s Opp. Memo at 10. Instead, he points to several events that occurred *after* his 2018 arrest as evidence that his proceedings were in administrative closure, not terminated. First, following his 2018 arrest, Reeves retained counsel who filed a motion to re-calendar his hearing, which was granted. See Reeves Aff. ¶23. Then, Judge Gordon-Uruakpa again found Reeves to be "prima facie eligible for Deferral of Removal" because he was "more likely than not to be tortured or killed if he is returned to Liberia." Id. at ¶24. Finally, on August 13, 2019, another immigration judge granted Reeves's request for deferral of removal. Id. at ¶25. Reeves contends that none of these actions would have been taken unless his case had been administratively closed, though he cites no authority to bolster this claim. Finally, he argues (based upon information and belief) that on the audio recording of his hearing Judge Gordon-Uruakpa can be heard telling DHS that "she did not have the legal authority to remove" Reeves, as he was in withholding-only proceedings, and the proceedings had not yet terminated. Pl.'s Opp. at 12.

These arguments are not persuasive. First, the INA provides an explicit avenue for Reeves to have contested the determination that he abandoned his application by failing to appear, by filing a motion to reopen within 90-days of the hearing. See 8 C.F.R. § 1208.2 (c)(3)(ii)(C); 8 U.S.C. § 1229a (e)(1) (allowing one petition to reopen withholding-only proceedings based on a claim that the applicant missed their proceedings due to a serious illness). Indeed, Reeves appears to have directed his prior attorney to do just that, though there is no indication in the record such a motion was ever filed. See Pl.'s Oppo. Memo at 3. Yet, even if he

had made such a motion, the regulations are clear that such an appeal "shall not stay removal" of the applicant "unless the immigration judge issues an order granting a stay pending disposition of the motion." 8 C.F.R. § 1208.2 (c)(3)(iii). Reeves provides no evidence that a stay of removal order was ever entered on his behalf. Thus, once Reeves failed to appear at his withholding proceedings, the INA instructs that his application must be denied, and his reinstated order of removal would not be stayed absent another affirmative order from the immigration judge.

Furthermore, there is no indication that administrative closure would have been appropriate in this instance, where there was no need to await some matter which "may not occur for a significant or undetermined period of time." Matter of Avetisyan, 251 I. & N. Dec. at 692. The regulations made the appropriate course of action clear, such that administrative closure would be in contravention of the statutory and regulatory directives. That immigration judges have granted Reeves's subsequent requests to reopen and re-docket his case *after* his arrest does not alter the validity and finality of his reinstated order of removal at the time of his arrest.

Finally, it is not dispositive that the immigration judge would have told DHS that she did not have the legal authority to order Reeves removed—indeed, this was true. In the context of withholding proceedings, an immigration judge can review only whether an application should be granted—nothing more. See 8 C.F.R. § 208.31(d) (directing applications for withholding of removal to immigration judges "for full consideration of the request for withholding of removal *only*") (emphasis added); 8 C.F.R. § 1208.2(c)(3)(i) (limiting withholding proceedings to a determination of eligibility for "withholding or deferral of removal," and noting that all parties are barred from "raising or considering any other issues"). Importantly, nothing about the supposed contents of the audio-recording of the hearing alluded to by Reeves indicates that the

immigration judge affirmatively placed his proceedings into an administrative closure. At most, it is a simple reiteration of the narrow scope of such proceedings.

Accordingly, the plain language of the Immigration Judge's order and the statutory and regulatory directives all support a finding that once Reeves failed to appear at his withholding proceedings, those proceedings were terminated, not administratively closed. Consequently, the Court finds that Reeves's reinstated prior order of removal from 1997 was a valid and final order at the time of his 2018 arrest. The ICE officers who arrested him were therefore following "a decision or action by the Attorney General . . . to execute removal orders," as outlined in the INA. 8 U.S.C. § 1252(g). Accordingly, the jurisdiction-stripping provision of the statute deprives this Court of jurisdiction to hear "any cause or claim" arising from the arrest, including Reeves's false arrest, excessive force, and other remaining claims. See, e.g., Sissoko v. Rocha, 509 F.3d 947 (9th Cir. 2001) (holding that the court was deprived of jurisdiction over *Bivens* claim for false arrest where detention arose from expedited removal proceedings); Foster v. Townsley, 243 F.3d 210, 214 (5th Cir. 2001) ("claims of excessive force . . . are all directly connected to the execution of the deportation order. Therefore, their acts fall within the ambit of section 1252(g) and are precluded from judicial review."); see also Hodgson v. United States, No. SA:13-cv-702, 2014 WL 4161777, at *8 (W.D. Tex. Aug. 19, 2014) (dismissing claims of false imprisonment, assault, and battery, as such claims were barred by § 1252(g)); Kareva v. United States, 9 F. Supp. 3d 838, 845 (S.D. Ohio 2014) (finding that § 1252(g) barred jurisdiction for a FTCA claim alleging false arrest which arose from the Government's action to execute a removal order).[1]

---

[1] Any constitutional torts asserted against the United States would also be barred by the doctrine of sovereign immunity. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The United States has not waived its immunity with respect to claims that its employees committed constitutional torts. See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994).

## CONCLUSION

The Government's motion to dismiss for lack of subject matter jurisdiction is granted. Because the Court has determined that it does not have jurisdiction to hear these claims, there is no need to address the Government's remaining arguments. The Clerk of Court is respectfully requested to terminate the motion at ECF Nos. 18 and 21 and close this case.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

Dated: November 2, 2020
New York, New York