USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 11/6/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

**MICHAEL REEVES,**

**Plaintiff,**

**-against-**

**UNITED STATES OF AMERICA,**

**Defendant.**
---------------------------------------------------------------X

**19-CV-08629 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge.**

On September 18, 2019, Michael Reeves filed a lawsuit against United States, in which he brought several claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, related to his June 25, 2018, arrest by Immigration and Customs Enforcement ("ICE"). ECF No. 1. The parties were referred to the Court-annexed Mediation Program. ECF No. 84. A mediation conference on September 23, 2024, resulted in agreement on the one claim that was then remaining in the case, for excessive use of force. ECF No. 107. On October 22, 2024, the Court endorsed the parties' stipulation and order of settlement and dismissal (the "Settlement Agreement"). ECF No. 109. Nearly two years later, Reeves moved to reopen the case pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, arguing that extraordinary circumstances and evidence he recently obtained, including through separate federal litigation, justified vacating the Settlement Agreement and continuing to litigate the case. ECF No. 110 ("Mot."). Reeves, now proceeding *pro se*, asks the Court to vacate the order dismissing the case, restore it to the active docket, and permit new discovery. Mot. at 2. The motion is DENIED.

## BACKGROUND

### I. Procedural Background

#### A. History of the Settlement Agreement

Reeves is a citizen of Liberia who came to the United States lawfully in 1986 and then remained past the expiration of his visa. ECF No. 33 at 2. After his conviction for two criminal charges in the 1990s, Reeves was removed to Liberia in 1998, but subsequently returned to the United States unlawfully. Id. Reeves was arrested by ICE pursuant to a Warrant of Removal outside his home in the Bronx, New York on June 25, 2018. Id. at 3. During the arrest, ICE officers allegedly tackled Reeves, placed him in a chokehold, and caused severe damage to his shoulder. Id.

Reeves brought this lawsuit on September 18, 2019, alleging claims under the FTCA. ECF No. 1. The Court dismissed the case for lack of jurisdiction, ECF No. 33, and Plaintiff appealed. But during oral argument, the government consented to remand to consider whether jurisdiction existed for an excessive force claim that Reeves had raised for the first time on appeal, ECF No. 39 at 5–6.

Back at the District Court, the parties were referred to the Court-annexed Mediation Program. ECF No. 97. A mediation conference was held on September 23, 2024, which resulted in the Settlement Agreement. ECF No. 107. Reeves was represented by counsel at the time. See ECF No. 94. Before mediation, counsel for Reeves submitted *ex parte* materials to the Court, including a letter from Reeves expressing concerns for his safety. The Court acknowledged Reeves's communication in a docket filing on August 22, 2024, and encouraged him to contact the appropriate authorities. ECF No. 105.

In the Settlement Agreement, the United States agreed to pay Reeves $75,000 "in full settlement of any and all claims, demands, rights, and causes of action that Plaintiff now has or may hereafter acquire against the United States, arising from or related to the facts, events, and circumstances giving rise to the Action, and any claims incident thereto." Settlement Agreement ¶ 3. On October 22, 2024, the Court endorsed the Settlement Agreement. ECF No. 109. Plaintiff continued to be represented by counsel during the finalization of the Settlement Agreement.

**B. The Current Motion**

Nearly two years later, Reeves moved to reopen this case. Mot. at 1. He also concurrently moved to terminate his counsel and proceed *pro se*. ECF No. 113. Reeves argues that after settling his claims, he "obtained governmental records, investigative materials, and other documentary evidence through separate federal litigation, Freedom of Information Act proceedings, state court litigation, and related lawful investigative efforts," which existed at the time of the settlement negotiations, but which were unavailable to him despite his reasonable diligence. Mot at 2.

In supplemental filings submitted in support of his motion, Reeves acknowledged that he signed the Settlement Agreement "voluntarily," ECF No. 112 ¶ 13, but says that at the time he signed the Settlement Agreement, he was "displaced from [his] home, living transiently, and struggling to manage both [his] physical injuries and the uncertainty surrounding [his] legal situation," id. ¶ 11. He also says that he signed the documents "while experiencing conditions that made it extraordinarily difficult for [him] to evaluate [his] legal options with the perspective [he] otherwise would have had." ECF No. 112 ¶ 13. On September 16, 2026, the United States

filed its opposition to Plaintiff's motion to reopen the case, ECF No. 129 ("Opp."), and Plaintiff submitted his reply brief on September 18, 2026, ECF No. 130 ("Reply").

## II. Reeves's Factual Allegations

Reeves has submitted a declaration supporting his motion as well as several supplemental filings. See ECF Nos. 112, 116, 118–121, 124–125, 127–128, 130. Reeves provides extensive allegations about events leading up to and following the mediation, the key elements of which are summarized below.

### A. Reeves's Arrest and Departure from New York

Shortly before this matter was referred to mediation, Reeves was arrested on March 12, 2024, by the New York City Police Department ("NYPD") in New York. ECF No. 112 ¶ 7. Although the charges against him were dropped, Reeves was "profoundly affected" by the arrest and feared that it might have immigration consequences. ECF No. 112 ¶ 7. Separate litigation regarding the legality of that arrest, as well as a search of Reeves's phone that resulted from the arrest, is pending in the United States District Court for the Eastern District of New York. See Reeves v. City of New York, et al., No. 24-CV-02408 (E.D.N.Y.) (the "E.D.N.Y Litigation").

Reeves says that before finalizing the Settlement Agreement, he was threatened by an unknown individual who told him, "You better leave that lawsuit alone if you want to live. We are going to kill you." ECF No. 120 at 3. Believing that his personal safety was at risk in Brooklyn, Reeves "left [his] residence with only the belongings [he] could carry and began moving between temporary hotel accommodations, truck stops, and [his] personal vehicle while attempting to find places where [he] believed [he] could remain safely." ECF No. 112 ¶ 8.

On August 4, 2024, believing he was in danger, Reeves sought help from the Sayreville Police Department in New Jersey. Id. ¶ 9. He states that the "resulting official police report

documented that Plaintiff appeared anxious, reported that someone was following him, and explained that he had traveled among multiple hotels during the preceding weeks." ECF No. 120 at 6. Sayreville police ran Reeves's information through the National Crime Information Center database, which prompted them to contact ICE. Id. Sayreville police then spoke with an ICE officer based in New York. Id. Following this incident, Reeves and his counsel contacted the Court to report his "extraordinary circumstances" and his "grave concern for his life and legal rights." Id. at 7.

Reeves states that, at some point after signing the Settlement Agreement, he was the victim of a "documented Brooklyn assault in which . . . he was held by the neck and repeatedly kicked" while his assailants told him, "You're not going to enjoy this money in New York. You better get the f— out of New York . . . You can't use that money here, and wherever you go, we going to find you . . ." Id. at 3. Reeves does not provide additional specifics about this assault.

**B. Reeves Experiences Threats and Attacks After Leaving New York**

After leaving New York, Reeves states that he traveled to North Carolina, where an incident took place at his automobile business, id. at 3, during which a third party named Curtis King damaged his property, resulting in "$36,000 in vehicle losses," ECF No. 118 ¶ 15. According to Reeves, King "repeatedly stalked me, repeatedly appeared around my business, damaged my vehicles, and engaged in conduct that caused me to fear for my safety." ECF No. 118 ¶ 14. Reeves states that "King repeatedly called him 'Mr. Lawsuit' and referred to Plaintiff bringing his New York settlement money to North Carolina." ECF No. 120 at 3. He also says that, during the confrontation in North Carolina, the "individuals confronting him expressly invoked ICE and the injuries he suffered in federal custody, including statements concerning

what 'ICE did to you' and threatening to "do the ICE" to his shoulders." Id. Reeves says that the incident resulted in criminal proceedings against King. Id.; ECF No. 118 ¶ 13.

Reeves further states that he continued to be subjected to threatening conduct after leaving North Carolina. While stopped at a McDonald's restaurant in Nevada, a stranger told him, "Oh, that's Michael Reeves. I'm about to call ICE." ECF No. 120 at 26. Reeves has not provided additional details about the Nevada interaction.

**C. Reeves Experiences Harassment in San Diego**

Reeves reports that he eventually made his way to San Diego, California where he lacked a safe place to stay and slept in public parks. ECF No. 118 ¶¶ 8–9. He obtained temporary housing through the city and county of San Diego before moving into his current residence. Id. ¶¶ 10–11. Reeves continues to experience threatening or harassing conduct in San Diego, and says that his "residence has been the subject of extensive correspondence with public officials and oversight agencies concerning these reported safety issues." Id. ¶ 12. On January 27, 2026, Reeves filed a hate crime complaint with the San Diego Police Department, reporting racial intimidation and harassment that he experienced at his residence. ECF No. 119, Ex. 6. On March 24, 2026, Reeves reported concerns to the San Diego Police Department about helicopters observed in disturbingly close proximity to his residence. Id., Ex. 4. Reeves also sent emails to San Diego police about "unlawful surveillance devices" in and around his residence. Id., Ex. 6. In support of this motion, Reeves has submitted recordings to the Court. One such video shows an August 30, 2026, encounter where an unidentified person walked up to Reeves's residence and made a rude hand gesture. ECF No. 128 at 2. See also ECF No. 127 (describing the incident).

**D. Reeves Obtains Additional Government Records**

Through discovery in the E.D.N.Y. Litigation, Reeves has obtained NYPD records related to his March 12, 2024 arrest, including the NYPD Complaint Report and Electronic Case Management System ("ECMS") activity log. Mot. at 23. He states that "[h]ad those records been available to me before settlement, they would have materially affected my understanding of the circumstances surrounding my claims and my evaluation of whether settlement was in my best interest." ECF No. 112 ¶ 20. He argues that the materials "are relevant because they concern events occurring while this action was actively pending and during court-supervised settlement negotiations." ECF No. 116 at 2.

A key document at issue is an NYPD record that contains the entry "Fugitive Enforcement Division: CONFERRAL WITH CASE DETECTIVE" on March 11, 2024, the day before Reeves's arrest by NYPD. ECF No. 124 at 4. The entry for the day of the arrest says, "Fugitive Enforcement Division: COMPLETED APPREHENSION — 217 BOERUM (ICARD)," followed by the closing of NYPD investigative activity. Id. The records also refer to an unspecified "companion case." Id.

Reeves says that he subsequently learned, from the deposition of the NYPD detective assigned to the investigation that led to his March 12, 2024 arrest, that "F.E.D." refers to the NYPD Fugitive Enforcement Division. ECF No. 125 at 4. Reeves seeks further discovery to identify the "companion case" referred to in the NYPD records and to understand "the basis for F.E.D.'s involvement, and any related federal communications." Id. at 11.

## ANALYSIS

### I. Legal Standard

Because Reeves is proceeding *pro se*, his filing must be afforded "special solicitude." Rosa v. Doe, 86 F.4th 1001, 1007 (2d Cir. 2023) (quoting Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010)). The "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted).

Reeves brings his motion pursuant to Federal Rule of Civil Procedure 60(b), which permits a court to provide relief from a judgment or order in six circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Any Rule 60(b) motion must be brought "within reasonable time" and motions under subparts (1), (2), or (3), must be brought within a year of the judgment or order. Fed. R. Civ. P. 60(c)(1).

"A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).

### II. Application

Defendant argues that Reeves's motion fails for three reasons. First, Reeves has failed to state a legally sufficient basis to void the parties' binding legal agreement. Opp. at 2. Defendant

argues that having second thoughts about the Settlement Agreement does not entitle Reeves to the requested relief. Id. Reeves argues that his motion is not the product of second thoughts but results from additional evidence discovered during the E.D.N.Y. Litigation. Reply at 1–3.

Second, Defendant argues that the motion is time-barred. Opp. at 2. Although Reeves has framed his motion as seeking relief under Rule 60(b)(6), for which Rule 60 does not prescribe a time limit, the primary basis for his motion is actually "newly discovered evidence," which must be brought within one year of the judgment under Rule 60(c)(1). That time elapsed in October 2025. Reeves argues that Defendant "confuses later-obtained evidence with the circumstances that evidence reveals," Reply at 3, and argues that "extraordinary circumstances existed when the settlement was reached, were contemporaneously brought to this Court's attention, and were only later illuminated by evidence Plaintiff did not possess at the time," id. at 4.

Third, Defendant argues Reeves fails to meet the requirement of Rule 60(b)(2) because he (i) fails to show that the newly-discovered evidence, which was in existence at the time of the mediation, could not have been obtained at the time with reasonable diligence; and (ii) fails to show that the evidence is both relevant to the merits of the litigation and sufficiently important to have changed the outcome of the litigation. Opp. at 2–3. Reeves acknowledges that he "is not offering the 2024 evidence to prove that ICE used excessive force in 2018." Reply at 7. Instead, he argues that the new evidence "concerns the circumstances under which Plaintiff later agreed to relinquish that claim." Id.

## A. Reeves Has Failed to State a Legally Sufficient Basis to Void the Settlement Agreement Under Rule 60(B)(6)

### 1. The Settlement Agreement is Enforceable

Settlement agreements are "interpreted according to general principles of contract law." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). "Once entered into, the contract is

binding and conclusive." Id. "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect." Id. (citing United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994)).

The Settlement Agreement is an enforceable contract. There is no dispute that the parties reached an agreement at a mediation where they were represented by counsel, and that the Settlement Agreement faithfully memorializes the parties' agreement. Reeves does not dispute the enforceability of the Settlement Agreement *per se*. However, he contends that he agreed to the settlement "while experiencing conditions that made it extraordinarily difficult for me to evaluate my legal options with the perspective I otherwise would have had," ECF No. 112 ¶ 13, that he had "serious concerns" about his safety and legal rights, id. ¶ 10, and that he was "displaced from my home, living transiently, and struggling to manage both my physical injuries and the uncertainty surrounding my legal situation," id. ¶ 11.

In light of the "special solicitude" afforded to *pro se* litigants, the Court considers whether these circumstances render the contract unenforceable under New York law as unconscionable or the result of duress or coercion. A finding of unconscionability requires a contract to be both "procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988). Procedural and substantive unconscionability operate on a "sliding scale" where "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." Catz v. Precision Glob. Consulting, No. 19-CV-07499 (ER), 2021 WL 1600097, at *5 (S.D.N.Y. Apr. 23, 2021) (quoting State v. Wolowitz, 96 A.D.2d 47, 68 (2d Dep't 1983)).

The facts do not indicate a substantively unconscionable contract; excessive force cases like this are routinely settled for monetary compensation in this district. While the Court is

sympathetic to the alleged challenges Reeves faced during his settlement negotiations, these circumstances do not rise to the level of overwhelming procedural unconscionability required to render the Settlement Agreement unenforceable. Compare Catz at *6 (internal quotations and citations omitted) (listing "deception or high pressure tactics" as signs of procedural unconscionability). There is no basis to believe Reeves was deceived or otherwise subjected to unfair negotiating tactics at the mediation. In fact, Reeves makes no allegations about the mediation itself. Instead, Reeves alleges that he was threatened and attacked in Brooklyn by unknown parties who referred to the lawsuit. Reeves has not provided a basis to connect that incident with Defendant or the mediation. Reeves also suggests that NYPD exchanged information with federal agents related to his March 2024 arrest. He does not identify why this alleged coordination is material to the Settlement Agreement in this case, which concerns his June 2018 arrest.

Nor do these facts support the conclusion that the Settlement Agreement is unenforceable due to coercion or duress. To establish a contract is the product of coercion, a party must show "(1) a threat, (2) which was unlawfully made, and (3) which caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." Catz, 2021 WL 1600097, at *7. No such threat has been alleged, and Reeves could have concluded mediation without agreeing to the Settlement Agreement, or any agreement.

**2. Reeves Has Not Established Grounds for Rule 60(b)(6) Relief**

Rule 60(b)(6) permits courts to set aside an order for "any other reason that justifies relief." A party cannot obtain relief under Rule 60(b)(6) when the grounds for relief fall under one of the other clauses of the Rule. See ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 109 (2d Cir. 2012) ("Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do

not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant."); Int'l Bhd. of Teamsters, 247 F.3d at 391–92 ("[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)"). See also Mavl Cap., Inc. v. Marine Transp. Logistics, Inc., No. 13-CV-07110 (PKC) (RLM), 2018 WL 1474175, at *9 (E.D.N.Y. Mar. 26, 2018), aff'd 771 F. App'x 56 (2d Cir. 2019) ("Because the facts Plaintiffs present for their primary argument based on 'newly discovered evidence' are identical to those that would be asserted under subsection (b)(2), they cannot seek relief thereunder."). The Court of Appeals is wary of movants "attempt[ing] to use Rule 60(b)(6) to circumvent the one-year time limitation in other subsections of Rule 60(b)." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012).

Considering the bases for Rule 60(b)(6) relief raised by Reeves *other than* the newly-obtained documents, Reeves has not shown "extraordinary circumstances" or that "the failure to grant relief would work an extreme hardship on the movant," as required under binding precedent. See ISC Holding AG, 688 F.3d at 109. Reeves acknowledges that he signed the Settlement Agreement "voluntarily" but says that he "did not believe that the settlement amount fully compensated [him] for [his] permanent shoulder injury." ECF No. 112 ¶¶ 12–13. Reeves's belief that he might be entitled to more compensation, however, does not form a legally sufficient basis to set aside the Settlement Agreement. It is common for parties to enter into settlement agreements that reflect a compromise between what they would like to obtain through litigation and what they realistically can achieve, considering the cost of litigation, the uncertainty of taking a matter to trial, and the time and delay that might be involved. With a settlement, plaintiffs obtain the benefit of finality and receiving a sum certain. In exchange, they

surrender the possibility of a potentially higher recovery from a jury, or from a settlement reached later in the litigation. They also protect themselves against the risk of no recovery at all. Reeves argues that the Settlement Agreement "was negotiated and ultimately approved based upon the factual record that existed at that time," and that the record was meaningfully incomplete. Mot at 29. But *all* settlement agreements are entered into based on the available information, which may not be exhaustive. Parties routinely factor in uncertainty about materials they do not have when calculating their settlement positions. Reeves says that he signed the Settlement Agreement while "displaced from my home, living transiently, and struggling to manage both my physical injuries and the uncertainty surrounding my legal situation." ECF No. 112 ¶ 11. The Court does not wish to minimize the severity of these circumstances; however, Reeves was aware of these circumstances when he entered the mediation process and made the choice voluntarily to settle his claim.

Reeves cites several cases to argue that this matter is one of the "rare situations in which later-developed facts and extraordinary circumstances justify reopening the judgment in the interests of justice," Mot. at 26, but both have substantially different facts. Klapprott v. United States, 335 U.S. 601 (1949), concerned a challenge to denaturalization proceedings in which "a citizen was stripped of his citizenship by his Government, without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship." Id. at 615. Reeves has not been incarcerated or detained since the mediation and seeks relief from an agreement he entered into willingly, rather than an adjudication imposed upon him involuntarily. Accordingly, Klapprott does not control the Court's decision. Ackermann v. United States, 340 U.S. 193 (1950), which also concerns a denaturalization proceeding, does not support Reeves's position

because the Court distinguished Klapprott and concluded the Rule 60(b)(6) standard was not met. Id. at 202. As the Court reasoned in Ackermann, "[t]he comparison [to Klapprott] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; . . . no counsel and counsel . . ." Id. at 202. Reeves's choice, liberty, and representation by counsel all point against a finding of "extraordinary circumstances." The additional cases cited by Reeves also do not point to a different conclusion. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988), which held that Rule 60(b)(6) can give rise to a remedy when a judge fails to recuse themselves from a case in which they have a conflict under 28 U.S.C. § 455, implicated concerns about judicial integrity that are not at issue here.

**3. Reeves's Motion is Untimely Under Rule 60(b)(6)**

Finally, I address the timeliness of Reeves's Rule 60(b)(6) motion. Although motions brought under Rule 60(b)(6) are not subject to a strict one-year limitations period, they must nevertheless be brought within a "reasonable time." When assessing what constitutes a "reasonable time," the Court must look to "the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 864 F.3d 172, 182 (2d Cir. 2017) (cleaned up).

All three factors favor Defendant. Other than the introduction of new evidence, which is properly addressed through a Rule 60(b)(2) motion, Reeves has not identified a basis for delay in seeking Rule 60(b)(6) relief. The threats and attack that Plaintiff alleges took place before mediation were known to him at the time he entered the Settlement Agreement and thus do not justify delay. Reeves provided the Court with extensive facts about developments that occurred *after* he entered the Settlement Agreement, including subsequent threats he received, his travel to

California, and the harassing conduct he alleges is ongoing there. Unlike with the pre-mediation allegations, Reeves did not have notice of these circumstances during negotiations. However, Reeves has failed to state a clear relationship between these events, the mediation, or the Settlement Agreement.

Vacating the Settlement Agreement would unfairly prejudice Defendant. The parties have not indicated whether the full settlement amount has been paid in the two years since the Settlement Agreement, but the Court assumes that the funds have been transferred. Vacating the Settlement Agreement would cause meaningful administrative burden on Defendant and potentially on the Court if asked to enforce recission of settlement funds. It would also require the United States to continue litigating—and responding to discovery requests in—a case where the key events took place more than eight years ago. Finally, the interest in finality, which protects the parties and the Court's interest in avoiding the costs and uncertainty of ongoing challenges to settled matters, weighs strongly in Defendant's favor. See generally Satterfeld v. Pfizer, Inc., No. 04-CV-03782 (KMW) (GWG), 2005 WL 1765708, at *9 (S.D.N.Y. July 18, 2005), aff'd, 208 F. App'x 59 (2d Cir. 2006) (collecting cases in which delays of over a year did not meet the "reasonable time" requirement).[1] Accordingly, to the extent that Reeves has a Rule 60(b)(6) argument not premised on newly-received documents, he has both failed to establish "extraordinary circumstances" that require relief and has not brought his Rule 60(b)(6) motion within a "reasonable time."

[1] The Court has been unable to locate one of the authorities cited by Plaintiff, Prudential Insurance Co. v. National Bank of Commerce, 393 F.2d 807 (2d Cir. 1968). ECF No. 110 at 31. Federal Rule of Civil Procedure 11 imposes a duty on attorneys and *pro se* litigants alike to certify that all citations contained in papers filed with the Court are accurate. Violations of Rule 11 may result in sanctions.

**B. Reeves's Motion to Re-open the Case Due to New Evidence is Untimely**

While Reeves does not frame his motion as a request under Rule 60(b)(2), his allegations about newly-produced evidence from his records requests and the E.D.N.Y. Litigation are plainly covered by "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Motions under Rule 60(b)(2) must be brought "not more than one year after judgment." Fed. R. Civ. P. 60(b). This "time constraint is absolute and controlling." Gottlieb v. S.E.C., No. 05-CV-02401 (LAP), 2007 WL 646382, at *2 (S.D.N.Y. Feb. 27, 2007), aff'd, 310 F. App'x 424 (2d Cir. 2009) (collecting cases strictly enforcing the one-year limit). This absolute rule is tempered by Rule 60(d), which allows the Court to "entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or to set aside a judgment for fraud upon the court." Fed. R. Civ. P. 60(d). However, there is no basis to conclude that fraud has been committed here. Accordingly, to the extent Reeves's motion is premised on newly-obtained information, it is untimely.

**C. Reeves Has Failed to Show that the Additional Evidence Is Material**

Finally, even if the Court were to equitably toll Reeves's time to file a Rule 60(b)(2) motion given his *pro se* status and challenging personal circumstances, doing so would be futile because Reeves has failed to show that the new evidence would have changed the outcome of his case, which concerns ICE's excessive use of force during a 2018 arrest. To prevail on a motion under Rule 60(b)(2), the "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence

must not be merely cumulative or impeaching." Int'l Bhd. of Teamsters, 247 F.3d at 392 (quoting United States v. IBT, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

Reeves has adequately alleged elements (1) and (2). He has alleged that the NYPD records at issue existed at the time of the mediation, because they were created contemporaneously with Reeves's March 2024 arrest. It is also plausible that Reeves lacked a basis to seek the records from Defendant until he received documents in the E.D.N.Y. Litigation.

But Reeves has failed to meet the requirements of elements (3) and (4). Even considering the special solicitude afforded to *pro se* plaintiffs, the Court is unable to conclude that the newly-discovered evidence would have changed the outcome of Reeves's excessive force case. Indeed, Reeves appears to concede this: "Plaintiff is not offering the 2024 evidence to prove that ICE used excessive force in 2018. That is not the asserted relevance of the evidence. Its relevance concerns the circumstances under which Plaintiff later agreed to relinquish that claim." Reply at 7. The mere fact that having the evidence would have caused Reeves to take a firmer stand in negotiations does not mean that the new evidence is legally relevant. The new evidence therefore would not have "changed the outcome" on the United States's liability in connection with the 2018 arrest. Int'l Bhd. of Teamsters, 247 F.3d at 392. Plaintiff has failed to establish the elements of a Rule 60(b)(2) motion, and any equitable tolling of the limitations period would be futile.

## CONCLUSION

Plaintiff's motion to reopen the case under Rule 60(b), ECF No. 110, is DENIED.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: November 6, 2026
New York, New York